UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA for the use and benefit of Philip J. Freeman, <br><br> Plaintiff, <br><br> v. <br><br> BERKLEY INSURANCE COMPANY et al., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) )  Case No. 4:25-cv-00643-SRC |

**<u>Memorandum and Order</u>**

Someone owes Philip Freeman money. The issue in this case is who. For now—not Berkley and North Wind. The United States, for the use and benefit of Freeman, sued (i) Berkley, (ii) North Wind, (iii) Elite Trucking, and (iv) Michael Null. Freeman asserts a Miller Act claim against Berkley and North Wind, and breach-of-contract and unjust-enrichment claims against Elite Trucking and Null. Berkley and North Wind moved to dismiss Freeman's Miller Act claim. And for the reasons stated below, the Court grants Berkley and North Wind's motion.

**I.      Background**

   **A.      Factual background**

The Court accepts the following well-pleaded facts as true for purposes of this Memorandum and Order. The U.S. Army Corps of Engineers awarded North Wind with a contract to close a landfill around Fort Leonard Wood, Missouri. Doc. 1 at ¶¶ 13–14. So, as required by the Miller Act, *see* 40 U.S.C. § 3131(b), North Wind obtained a payment bond from Berkley to secure payment for all materials and services provided by those in a direct relationship with North Wind or a subcontractor of the principal. *See* doc. 1 at ¶ 31; *see also*

doc. 1-2 at 1 (The Court cites to page numbers as assigned by CM/ECF.).  North Wind then contracted with Arrowhead as the "primary subcontractor" to close the landfill.  Doc. 1 at ¶ 15.

But to close a landfill, you need, predictably, "dirt—a lot of dirt."  Doc. 26 at 2; *see also* doc. 1 at ¶ 17.  So Arrowhead contracted with Elite Trucking and Null to provide the dirt.  *Id.* at ¶ 18.  Elite Trucking and Null in turn orally contracted with Freeman to harvest dirt from his dirt farm.  *Id.* at ¶¶ 19–22.  For every 10-yard load of dirt that Elite Trucking and Null harvested, they agreed to pay Freeman $85.00.  *Id.* at ¶ 21.  After harvesting 29,078 yards of dirt, Elite Trucking and Null owed Freeman $247,163.00.  *Id.* at ¶ 24.  But Elite Trucking and Null never paid Freeman for the harvested dirt.  *Id.* at ¶ 25.

At some point Arrowhead realized that Elite Trucking was not providing the dirt necessary to finish closing the landfill.  *Id.* at ¶ 27.  So, Arrowhead directly contracted with Freeman to provide the remaining dirt and paid accordingly.  *Id.* at ¶¶ 27–28.  But Freeman remained unpaid for the original 29,078 yards of dirt harvested from his land by Elite Trucking and Null.  *Id.* at ¶ 37.

On November 6, 2024, Freeman sent a written demand to Northwinds Engineering, LLC (not North Wind), and to Arrowhead, seeking payment.  *See id.* at ¶ 38; *see also* doc. 1-3; Fed. R. Civ. Proc. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").  A week later, Freeman sent another demand letter, this time to North Wind.  *See* doc. 1 at ¶ 39; *see also* doc. 1-4.  But Freeman remains unpaid.  Doc. 1 at ¶ 47.  Freeman therefore seeks compensation under the payment bond Berkley issued to North Wind.  *Id.*

B.     **Procedural background**

Freeman filed his complaint on May 6, 2025. *See* doc. 1. He asserts one Miller Act claim against Berkley and North Wind. *See* doc. 1 at ¶¶ 33–34. And he alleges breach-of-contract and unjust-enrichment claims against Elite Trucking and Null. *See id.* at ¶¶ 50–59, 60–65. Each of Freeman's claims seek, at a minimum, payment for the $247,163.00 owed to him for the dirt harvested from his land. *See id.* at 8, 10, and 11. Berkley and North Wind moved to dismiss Freeman's Miller Act claim. Doc. 14. Freeman filed his response, doc. 26, and Berkley and North Wind filed their reply, doc. 33. In between the response and reply, Freeman filed a motion for a default judgment against Elite Trucking and Null. Doc. 31. But having reviewed the parties' briefing, and to avoid any risk of inconsistent judgments, the Court first rules on Berkley and North Wind's motion to dismiss.

II.    **Legal standard**

Under Rule 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." The notice pleading standard of Rule 8(a)(2) requires a plaintiff to give "a short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To meet this standard and to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This requirement of facial plausibility means the factual content of the plaintiff's allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). The Court must grant all

3

reasonable inferences in favor of the nonmoving party. *Lustgraaf v. Behrens*, 619 F.3d 867, 872–73 (8th Cir. 2010).

When ruling on a motion to dismiss, a court "must liberally construe a complaint in favor of the plaintiff." *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010). But if a claim fails to allege one of the elements necessary to recover on a legal theory, the Court must dismiss that claim for failure to state a claim upon which relief can be granted. *See Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 355 (8th Cir. 2011). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Nor does a "pleading that merely pleads 'labels and conclusions,' or a 'formulaic recitation' of the elements of a cause of action, or 'naked assertions' devoid of factual enhancement" suffice. *Hamilton v. Palm*, 621 F.3d 816, 817–18 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). Although courts must accept all factual allegations as true, they are not bound to take as true a legal conclusion couched as a factual allegation. *See Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 677–78.

Only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678. Therefore, the Court must determine if the well-pleaded factual allegations "plausibly give rise to an entitlement to relief." *Id.* at 679. This "context-specific task" requires the Court to "draw on its judicial experience and common sense." *Id.*

**III.     Discussion**

Berkley and North Wind moved to dismiss Freeman's Miller Act claim for failure to state a claim on which the Court can grant relief. *See* doc. 14; Fed. R. Civ. P. 12(b)(6). They argue that (i) Freeman is an improper Miller Act claimant and (ii) he did not provide North Wind with proper notice as the Miller Act requires. *Id.* at 1–2. But because the Court agrees that Freeman

4

cannot obtain relief under the Miller Act, the Court need not address the notice issue. The Court therefore grants Berkley and North Wind's motion to dismiss.

### A. Freeman fails to plausibly allege that he is a proper Miller Act claimant

Berkley and North Wind argue that Freeman improperly claims relief under the Miller Act, because he's too far removed from North Wind (the prime contractor) to collect on the payment bond. *See* doc. 14-1 at 2. Freeman argues that text and precedent support a broader reading of the Miller Act that includes him as a proper claimant. *See* doc. 26 at 5–7. Alternatively, Freeman argues that the parties should flesh out the remoteness issue during discovery. *See* doc. 26 at 9–10. But for the reasons stated below, Freeman's complaint fails to plausibly allege that he is a proper Miller Act claimant.

The Miller Act ensures that those who work on federal construction projects get paid for their work. The Act requires that every government contractor, where the contract exceeds $100,000, give a "payment bond" with a "surety . . . for the protection of all persons supplying labor and material" under the contract. 40 U.S.C. § 3131(b)(2); *see also Clifford F. MacEvoy Co. v. United States ex rel. Calvin Tomkins Co.*, 322 U.S. 102, 106 (1944). The Act gives a right to sue to:

> Every person that has furnished labor or material in carrying out work provided for in a contract for which a payment bond is furnished under section 3131 of this title and that has not been paid in full within 90 days after the day on which the person did or performed the last of the labor or furnished or supplied the material for which the claim is made may bring a civil action on the payment bond for the amount unpaid at the time the civil action is brought and may prosecute the action to final execution and judgment for the amount due.

40 U.S.C. § 3133(b)(1). Though Congress drafted the Act to be broad and "highly remedial," the Act, by its plain terms, also significantly limits the right to sue. *See Clifford F. MacEvoy Co.*, 322 U.S. at 107. As relevant here, the Act limits the right to sue as follows:

5

> A person having a direct contractual relationship with a subcontractor but no contractual relationship, express or implied, with the contractor furnishing the payment bond may bring a civil action on the payment bond on giving written notice to the contractor within 90 days from the date on which the person did or performed the last of the labor or furnished or supplied the last of the material for which the claim is made.

40 U.S.C. § 3133(b)(2).  In sum, section 3133 clarifies that the right to sue is limited to: (i) materialmen, laborers, and subcontractors that deal directly with the prime contractor and (ii) those same individuals who—while not having any contractual relationship with the prime contractor—have a direct contractual relationship with a subcontractor and gives notice of their claim to the prime contractor.  *See* 40 U.S.C. § 3133(b)(1)–(2); *see also Clifford F. MacEvoy Co.*, 322 U.S. at 107–08.  The limitation serves to prevent those in "more remote relationships," that is, anyone beyond a sub-subcontractor (*i.e.*, an entity hired by a subcontractor to perform the subcontractor's assigned work), from recovering on the payment bond.  *Clifford F. MacEvoy Co.*, 322 U.S. at 107–08.

But who is a subcontractor?  The Supreme Court held that "a subcontractor is one who performs for and takes from the prime contractor a specific part of the labor or material requirements of the original contract."  *Id.* at 109.  The Supreme Court later required that a subcontractor also have a "sufficiently substantial and important" relationship to the prime contractor to justify treatment as a subcontractor.  *United States ex rel. Morris Const., Inc. v. Aetna Cas. Ins. Co.*, 908 F.2d 375, 377 (8th Cir. 1990) (citing *F. D. Rich Co. v. United States ex rel. Indus. Lumber Co.*, 417 U.S. 116, 123–124 (1974)).  The Court reasoned that if a subcontractor has a sufficiently substantial and important relationship with the prime contractor, "the prime contractor could have easily protected itself from liability by requiring bond security or other protection."  *Id.* (cleaned up).  And if the prime contractor failed to easily protect itself, courts won't penalize a subcontractor by preventing recovery on the payment bond.  *See id.*

6

Thus, a subcontractor is one who: (i) "contracted to supply labor or material to the prime contractor," and (ii) "plays a sufficiently substantial role in the construction project that the general contractor could have negotiated to have the subcontractor assume the risk of the subcontractor's default." *United States ex rel. Morris Const.*, 908 F.2d at 377. And to reiterate, the Miller Act protects subcontractors and sub-subcontractors, but not those in a more remote relationship to the prime contractor. *J.W. Bateson Co. v. United States ex rel. Bd. of Trs. of Nat. Automatic Sprinkler Indus. Pension Fund*, 434 U.S. 586, 594 (1978).

The question now becomes whether Freeman is a sub-subcontractor within the Miller Act's protection, or a sub-sub-subcontractor too remote from the prime contractor to warrant the Act's protection. The answer depends on which version of Freeman's facts one relies on. If the Court takes just the facts as alleged in the complaint as true, Freeman's claim fails. The U.S. Army Corps of Engineers awarded North Wind with the contract; North Wind was the prime contractor. Doc. 1 at ¶¶ 13–14. North Wind then contracted with Arrowhead as the "primary subcontractor" to close the landfill. *Id.* at ¶ 15. And Arrowhead in turn contracted with Elite Trucking and Null to provide the dirt. *Id.* at ¶ 18. Then Elite Trucking and Null orally contracted with Freeman to harvest dirt from his land. *Id.* at ¶¶ 19–22. That makes Elite Trucking and Null sub-subcontractors and Freeman a remote sub-sub-subcontractor that falls outside of the Miller Act's ambit.

But in his response to the motion, doc. 26, Freeman makes a saving argument. Remember: at some point Arrowhead determined that Elite Trucking and Null weren't fulfilling their end of the contract. Doc. 1 at ¶¶ 27–28. So Arrowhead directly contracted with Freeman to provide the remaining dirt and paid accordingly. *Id*. From the complaint's face, the Court reasonably inferred that Arrowhead entered into contracts with two different sub-subcontractors.

7

First, Arrowhead contracted with Elite Trucking and Null, doc. 1 at ¶ 18, and Elite Trucking and Null then contracted with Freeman, doc. 1 at ¶ 20. Then separately, Arrowhead went around Elite Trucking and Null and "contracted directly" with Freeman to finish closing the landfill. *Id.* at ¶ 27.

But according to Freeman's response brief, he only ever had one contract: "to harvest and supply dirt . . . much like an open account with both Null and Arrowhead authorized to draw upon." Doc. 26 at 7. In this version, Arrowhead became frustrated with Elite Trucking and Null, so Arrowhead "simply went around Null and directly to Freeman to procure the last of the dirt needed to complete the Project." *Id.* at 8. And Arrowhead paid Freeman for this part of the contract. Doc. 1 at ¶¶ 27–28. Under this version of events, North Wind (the prime contractor) contracted with Arrowhead (the subcontractor), and Arrowhead contracted with Freeman (the sub-subcontractor). Thus, according to this version, Freeman is within the Act's ambit.

And what about Freeman's Complaint that states that "[a]fter Arrowhead was unable to secure from Null and Elite the remaining dirt necessary to complete the Landfill Project, Arrowhead contracted directly with [Freeman]"? Doc. 1 at ¶ 27. Freeman responds, "[r]easonably, the Court can infer there was one open account contract." Doc. 26 at 8. But the Court cannot consider facts not alleged in the complaint. *Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 982 (8th Cir. 2008). And though some exceptions to that rule exist, *see id.*, none are relevant here. Further, Freeman may not amend his complaint in a brief. *Thomas v. United Steelworkers Loc. 1938*, 743 F.3d 1134, 1140 (8th Cir. 2014).

From the face of Freeman's Complaint, the Court can reasonably infer only that two separate contracts existed with Freeman. North Wind and Arrowhead refused to pay Freeman for the amount that Elite Trucking and Null owed him. Doc. 1 at ¶¶ 42–44. Yet when it came to

8

the second contract for the remaining dirt, Arrowhead paid Freeman.  Doc. 1 at ¶¶ 27–28; *see* doc. 1-1 (showing a purchase order signed September 24, 2024); *see also* doc. 1-8 (showing a statement directly from Freeman to Arrowhead on September 30, 2024).  The Court can only draw these reasonable inferences from the complaint:  Arrowhead originally sub-subcontracted with Elite Trucking and Null, not with Freeman.  Doc. 1 at ¶ 18.  And Elite Trucking and Null then further subcontracted with Freeman to harvest his dirt.  *Id.* at. ¶ 20.  But when Elite Trucking and Null failed to supply the dirt necessary to close the landfill, Arrowhead then separately and directly contracted for the remaining dirt with Freeman and paid accordingly.  *Id.* at ¶¶ 27–28.  And so, as a remote sub-sub-subcontractor on the original contract, Freeman fails to plausibly state a claim under the Miller Act.  *See* 40 U.S.C. § 3133(b)(1)–(2); *see also Clifford F. MacEvoy Co.*, 322 U.S. at 107–08; *J.W. Bateson Co.*, 434 U.S. at 594.

**IV.    Conclusion**

Accordingly, the Court grants Berkley and North Wind's [14] motion to dismiss.  The Court notes that Freeman—in his response brief—requests leave to amend his complaint if the Court granted Berkley and North Wind's motion.  Doc. 26 at 13–14.  But statements inserted into a response brief are not motions.  *See* Fed. R. Civ. P. 7(b).

So ordered this 13th day of January 2026.

*SL R. CL*

STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE

9